**Slip Op. 05-34**

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
:
TIJID, INC. (d/b/a DIJIT, INC.)           :
and PALM BEACH HOME ACCENTS, INC.,         :
                                          :
        Plaintiffs,                        :
                                          :        Court No.
        v.                                 :        04-00134
                                          :
UNITED STATES,                             :
                                          :
        Defendant,                         :
                                          :
        and                                :
                                          :
NATIONAL CANDLE ASSOCIATION,               :
                                          :
        Defendant-Intervenor.             :
_____:

Plaintiffs, TIJID, Inc. (d/b/a DIJIT, Inc.) and Palm Beach Home Accents, Inc. (collectively, "TIJID") move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging the determination of the United States Department of Commerce, International Trade Administration's ("Commerce") antidumping duty administrative review, entitled <u>Notice of Final Results and Rescission, in Part, of the Antidumping Duty Administrative Review for Petroleum Wax Candles From the People's Republic of China</u> ("<u>Final Results</u>"), 69 Fed. Reg. 12,121 (Mar. 15, 2004).

Plaintiffs challenge two aspects of the <u>Final Results</u>. First, Plaintiffs, contend that Commerce relied on an impermissible interpretation of 19 U.S.C. § 1677(33)(F) (2000) in determining that Dongguan Fay Candle Co., Ltd. ("Fay Candle") and TIJID were not affiliated through joint control of a third party. Second, Plaintiffs challenge Commerce's determination that TIJID and Fay Candle were not affiliated under 19 U.S.C. § 1677(33)(G). TIJID argues that Commerce's determinations are not supported by substantial evidence or in accordance with law.

Commerce responds that the record evidence does not support TIJID's alleged affiliation with Fay Candle under either statutory provision. Commerce contends that its determinations are supported by substantial evidence. Defendant-Intervenor, National Candle Association ("NCA"), generally agrees and adds that TIJID could not

meet any of the statutory criteria to establish affiliation under 19 U.S.C. § 1677(33).

**Held:** Commerce's determination is supported by substantial evidence and in accordance with law.  TIJID failed to establish affiliation under either 19 U.S.C. § 1677(33)(F) or (G).  Commerce properly concluded that TIJID was not affiliated with Fay Candle.

[Plaintiff's USCIT R. 56.2 motion is denied.  Case dismissed.]

March 18, 2005

White & Case, LLP (William J. Clinton, Adams C. Lee, William J. Moran, and Jay C. Campbell) for TIJID, Inc. (d/b/a DIJIT, Inc.) and Palm Beach Home Accents, Inc., plaintiffs.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; Commercial Litigation Branch, Civil Division, United States Department of Justice (David Silverbrand); of counsel: James K. Lockett, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for the United States, defendant.

Barnes & Thornburg LLP (Randolph J. Stayin and Karen A. McGee) for National Candles Association, defendant-intervenor.

**OPINION**

**TSOUCALAS, Senior Judge:**  Plaintiffs, TIJID, Inc. (d/b/a DIJIT, Inc.) and Palm Beach Home Accents, Inc. (collectively, "TIJID") move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging the determination of the United States Department of Commerce, International Trade Administration's ("Commerce") antidumping duty administrative review, entitled Notice of Final Results and Rescission, in Part, of the Antidumping Duty Administrative Review for Petroleum Wax Candles From the People's

Republic of China ("Final Results"), 69 Fed. Reg. 12,121 (Mar. 15, 2004).

Plaintiffs challenge two aspects of the Final Results. First, Plaintiffs, contend that Commerce relied on an impermissible interpretation of 19 U.S.C. § 1677(33)(F) (2000) in determining that Dongguan Fay Candle Co., Ltd. ("Fay Candle") and TIJID were not affiliated through joint control of a third party. Second, Plaintiffs challenge Commerce's determination that TIJID and Fay Candle were not affiliated under 19 U.S.C. § 1677(33)(G). TIJID argues that Commerce's determinations are not supported by substantial evidence or in accordance with law.

Commerce responds that the record evidence does not support TIJID's alleged affiliation with Fay Candle under either statutory provision. Commerce contends that its determinations are supported by substantial record evidence. Defendant-Intervenor, National Candle Association ("NCA"), generally agrees and adds that TIJID could not meet any of the statutory criteria to establish affiliation under 19 U.S.C. § 1677(33).

**BACKGROUND**

This matter concerns the antidumping duty order on petroleum wax candles from the People's Republic of China for the period of investigation covering August 1, 2001 through July 31, 2002. See

Final Results, 69 Fed. Reg. at 12,121. On September 9, 2003, Commerce published the preliminary results of its administrative review. See Notice of Preliminary Resuslts and Preliminary Partial Rescission of the Antidumping Administrative Review for Petroleum Wax Candles From the People's Republic of China ("Preliminary Results"), 68 Fed. Reg. 53,109 (Sept. 9, 2003). For the Preliminary Results, Commerce found that record evidence did not demonstrate that TIJID was affiliated with Fay Candle under 19 U.S.C. § 1677(33). See Preliminary Results 68 Fed. Reg. at 53,113. On March 15, 2004, Commerce published its Final Results and continued to find that TIJID and Fay Candle were unaffiliated. See Final Results, 69 Fed. Reg. at 12,125. Accordingly, Commerce based its fair value on export price ("EP") rather than constructed export price ("CEP"). See id.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a(a) (2000) and 28 U.S.C. § 1581(c) (2000).

## STANDARD OF REVIEW

In reviewing a challenge to Commerce's final determination in an antidumping administrative review, the Court will uphold Commerce's determination unless it is "unsupported by substantial

evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(I) (2000).

## I.    Substantial Evidence Test

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) (citations omitted). Moreover, "the court may not substitute its judgment for that of the [agency] when the choice is 'between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" American Spring Wire Corp. v. United States, 8 CIT 20, 22, 590 F. Supp. 1273, 1276 (1984) (quoting Penntech Papers, Inc. v. NLRB, 706 F.2d 18, 22-23 (1st Cir. 1983) (quoting, in turn, Universal Camera, 340 U.S. at 488)).

## II.    Chevron Two-Step Analysis

To determine whether Commerce's interpretation and application of the antidumping statute is "in accordance with law," the Court

must undertake the two-step analysis prescribed by <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984). Under the first step, the Court reviews Commerce's construction of a statutory provision to determine whether "Congress has directly spoken to the precise question at issue." <u>Id.</u> at 842. "To ascertain whether Congress had an intention on the precise question at issue, [the Court] employ[s] the 'traditional tools of statutory construction.'" <u>Timex V.I., Inc. v. United States</u>, 157 F.3d 879, 882 (Fed. Cir. 1998) (citing <u>Chevron</u>, 467 U.S. at 843 n.9). "The first and foremost 'tool' to be used is the statute's text, giving it its plain meaning. Because a statute's text is Congress' final expression of its intent, if the text answers the question, that is the end of the matter." <u>Id.</u> (citations omitted). Beyond the statute's text, the tools of statutory construction "include the statute's structure, canons of statutory construction, and legislative history." <u>Id.</u> (citations omitted); <u>but see</u> <u>Floral Trade Council v. United States</u>, 23 CIT 20, 22 n.6, 41 F. Supp. 2d 319, 323 n.6 (1999) (noting that "not all rules of statutory construction rise to the level of a canon") (citation omitted).

If, after employing the first prong of <u>Chevron</u>, the Court determines that the statute is silent or ambiguous with respect to the specific issue, the question for the Court becomes whether

Commerce's construction of the statute is permissible. See Chevron, 467 U.S. at 843. Essentially, this is an inquiry into the reasonableness of Commerce's interpretation. See Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996). Provided Commerce has acted rationally, the Court may not substitute its judgment for the agency's interpretation. See Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (holding that "a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another"); see also IPSCO, Inc. v. United States, 965 F.2d 1056, 1061 (Fed. Cir. 1992). The "Court will sustain the determination if it is reasonable and supported by the record as a whole, including whatever fairly detracts from the substantiality of the evidence." Negev Phosphates, Ltd. v. United States, 12 CIT 1074, 1077, 699 F. Supp. 938, 942 (1988) (citations omitted). In determining whether Commerce's interpretation is reasonable, the Court considers the following non-exclusive list of factors: the express terms of the provisions at issue, the objectives of those provisions, and the objectives of the antidumping scheme as a whole. See Mitsubishi Heavy Indus. v. United States, 22 CIT 541, 545, 15 F. Supp. 2d 807, 813 (1998).

## DISCUSSION

### I.   Factual Background

TIJID is an importer of candles from the People's Republic of China.[1]  See Mem. P. & A. Supp. Pls.' USCIT R. 56.2 Mot. J. Upon Agency R. ("TIJID's Mem.") at 3-7.  During the administrative review, Commerce issued questionnaires to Fay Candle.  See Def.'s Resp. Opp'n Pls.' Mot. J. Upon Agency R. ("Commerce's Resp.") at 3. Fay Candle stated in its questionnaire response that its relationship with TIJID constituted an affiliation under 19 U.S.C. § 1677(33).  See id.  Consequently, Fay Candle reported its sales to the United States on the basis of CEP.  See id.  In its Preliminary Results, however, Commerce determined that record evidence did not support Fay Candle's assertion of affiliation with TIJID.[2]  See Preliminary Results, 68 Fed. Reg. at 53,113.  Commerce based Fay Candle's fair value comparisons upon the EP and not the CEP.  See id. at 53,114.

---

[1]     Internally, Plaintiffs use the name Saull Enterprises to describe the group of companies—including TIJID—owned and controlled by Mr. Jeffrey Saull.  See TIJID's Mem. at 3.

[2]     Commerce's finding was based upon the Affiliation Memo: Memorandum from Sebastian G. Wright to Barbara E. Tillman, Re: Petroleum Wax Candles for the People's Republic of China for the Period of August 1, 2001 through July 31, 2002: Analysis of the Relationship Between Fay Candle and TIJID, dated September 4, 2003. The Court, in the interest of clarity, will refer to this document as Affiliation Memo and match pagination to the printed documents provided by Commerce.  See e.g., App. Docs. Supp. Def.'s Mem. Opp'n Mot. J. Upon Agency R. ("Commerce's App.") at Tab 4.

For its Final Results, Commerce considered the case briefs, verification and comments upon verification and determined that, under 19 U.S.C. § 1677(33)(F) and (G), TIJID was not affiliated with Fay Candle. See Final Results, 69 Fed. Reg. at 12,125. Commerce concluded that the relationship between TIJID and Fay Candle was that of the typical buyer and typical supplier. See Issues & Decision Mem.[3] at 6-8. Commerce also concluded that record evidence did not support a finding that TIJID controlled Fay Candle or that Fay Candle was reliant on TIJID. See id. Finally, Commerce determined that Fay Candle's involvement with two Hong Kong companies[4] (the "Hong Kong Companies") did not impact its relationship with TIJID. Accordingly, Commerce found that TIJID and Fay Candle were not affiliated under 19 U.S.C. § 1677(33).

## II. Statutory Background

Affiliated persons are defined as "[t]wo or more persons directly or indirectly controlling, controlled by, or under common

---

[3]    The full title of this document is Issues and Decision Memorandum for Final Results of Antidumping Duty Administrative Review of Petroleum Wax Candles from the People's Republic of China, and was adopted by the Final Results, 69 Fed. Reg. at 12,125 (generally accessible on the internet at http://ia.ita.doc.gov/frn/summary/prc/04-5802-1.pdf). The Court, in the interest of clarity, will refer to this document as Issues & Decision Mem. and match pagination to the printed documents provided by Commerce. See e.g., Commerce's App. at Tab 2.

[4]    The names of the two entities is business proprietary information and confidential.

control with, any person." 19 U.S.C. § 1677(33)(F). Additionally, "any person who controls any other person and such other person," are considered to be affiliated. 19 U.S.C. § 1677(33)(G). Pursuant to 19 U.S.C. § 1677(33), "a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person." 19 U.S.C. § 1677(33). Commerce's regulations further instruct that in determining whether control over another person exists, Commerce "will consider the following factors, among others: corporate or family groupings; franchise or joint venture agreements; debt financing; and close supplier relationships." 19 C.F.R. § 351.102(b) (2002). Pursuant to its regulation, Commerce "will not find that control exists on the basis of these factors unless the relationship has the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise or foreign like product." Id.

### III. Commerce Properly Determined that Fay Candle and TIJID are not Affiliated Pursuant to 19 U.S.C. § 1677(33)(F)

#### A. Contentions of the Parties

##### 1. TIJID's Contentions

TIJID contends that Commerce erred in concluding that it was not affiliated with Fay Candle pursuant to 19 U.S.C. § 1677(33)(F). See TIJID's Mem. at 11-18. TIJID asserts that it was affiliated

with Fay Candle because each controlled two "third persons" during the administrative review. See id. at 11. Mr. Saull and the CEO of Fay Candle served as the only directors on the boards of the Hong Kong Companies. See id. at 11-12. Consequently, TIJID and Fay Candle were each in a position to exercise restraint or direction either legally or operationally over the Hong Kong Companies. See id. TIJID, therefore, maintains that it jointly controlled the Hong Kong Companies with Fay Candle and satisfied the statutory definition of affiliation set forth in 19 U.S.C. § 1677(33)(F). See id.

TIJID also claims that Commerce impermissibly required that the Hong Kong Companies be directly involved in the subject merchandise, and that TIJID control Fay Candle. See TIJID's Mem. at 12-16. TIJID argues that the statute sets forth a bright-line test requiring a finding of affiliation when there is any type of direct or indirect control over a third party. See id. at 13. The statutory term "any" indicates, that Commerce must find affiliation based on the joint control of a third party, regardless of the activity or nature of that third party. See id. Congress' failure to explicitly require a connection with the subject merchandise "further supports the conclusion that the third person need not be involved in the sale of the subject merchandise." Id. TIJID argues that the statutory language does not require "a finding that

the control of the third person must be strong enough to link the two companies together in a control relationship." Id. at 14.

TIJID contends that Commerce misapplied 19 C.F.R. § 351.102(b). See id. at 15. TIJID argues that the regulation does not require Commerce to find that each relationship described in the statute have the potential to impact decisions regarding production, pricing, or cost of the subject merchandise. See id. TIJID maintains that this finding is only required for affiliation relationships rooted on control. See id. The regulation limits its reach to control relationships based on corporate or family groupings, franchise or joint venture agreements, debt financing or close supplier relationships. See id. at 16. TIJID maintains that it was not required to show that its relationship had the potential to impact decisions regarding the subject merchandise because its affiliation claim is not based on any one of these factors. See id.

Alternatively, TIJID contends that if Commerce were required to consider the "potential to impact" portion of the regulation, then Commerce failed to examine the totality of the evidence. See id. at 16-18. The nature of the relationship between TIJID and Fay Candle constitutes evidence of the potential to impact production and pricing decisions involving the subject merchandise. See id. In support, TIJID points to record evidence of: (1) the close

"brotherly" relationship between Mr. Saull and Fay Candle's CEO; (2) the irregular payment systems between the two companies; (3) Fay Candle's exclusive sale of subject merchandise to TIJID, and (3) TIJID's involvement in product development and design, the purchase of raw materials, oversight of production, and quality control. See id. at 17-18. Accordingly, TIJID argues that the evidence demonstrates that TIJID and Fay Candle jointly controlled the Hong Kong Companies and, therefore, were affiliated under the statute. See id. at 18.

### 2. Commerce's Contentions

Commerce responds that it properly determined that TIJID and Fay Candle were not affiliated pursuant to 19 U.S.C. § 1677(33). See Commerce's Resp. at 15-22. Commerce argues that the common board involvement of Mr. Saull and Fay Candle's CEO does not establish affiliation because neither of the Hong Kong Companies were involved in sales of the subject merchandise. See id. at 15. Commerce notes that it found that one of the Hong Kong Companies may have been involved in sales of subject merchandise outside the United States after the period of review. See id. at 21. Furthermore, Commerce found Fay Candle's involvement in the Hong Kong Companies was minor in comparison to TIJID's involvement. See id. at 15. TIJID failed to demonstrate that: (1) Fay Candle was in the position to exercise restraint or direction over the Hong Kong

Companies and (2) Fay Candle's had the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise. See id. at 15-21.

In applying 19 U.S.C. § 1677(33)(F), Commerce considers whether joint control of a third party–the Hong Kong Companies in the case at bar–may impact decisions relating to subject merchandise. See id. at 16-17. Commerce also considers whether such a party exercises restraint or direction over the third party. See id. Commerce notes that the court affirmed these two aspects of its control analysis. See id. (citing Mitsubishi Heavy Indus., Ltd. v. United States, 23 CIT 326, 54 F. Supp. 2d 1183 (1999)). Commerce further contends that the factors set forth in 19 C.F.R. § 351.102(b) are relevant to the situation of joint control under 19 U.S.C. § 1677(33)(F). See Commerce's Resp. at 18. Commerce notes that "[a]s the preamble to the regulation makes clear, the factors cited are factors to evaluate 'control,' which is the basis of evaluation [in 19 U.S.C. § 1677(33)(F)] . . . ." Id. The factors in the regulation were taken from the Statement of Administrative Action ("SAA"), which does not indicate that the factors are inapplicable to 19 U.S.C. § 1677(33)(F). See id. Accordingly, Commerce argues that it properly considered whether Fay Candle's relationship with the Hong Kong Companies had the potential to impact decisions concerning the production, pricing,

or cost of the subject merchandise.  See id. at 18-19.

NCA generally agrees that Commerce applied the proper legal standard in reaching its decision and that record evidence confirms that Fay Candle did not exercise restraint or direction over the Hong Kong companies.  See Resp. Br. NCA Opp'n USCIT R. 56.2 Mot. J. Agency R. Pls.' ("NCA's Resp.") at 20-23.

### B.    Analysis

#### 1.    Commerce Applied the Proper Legal Standard in its Affiliation Analysis Under 19 U.S.C. § 1677(33)(F)

The Court finds that Commerce properly considered whether TIJID and Fay Candle jointly controlled the two Hong Kong Companies and, if so, whether such joint control had the potential to impact decisions related to the subject merchandise.  TIJID argues that 19 U.S.C. § 1677(33)(F) sets forth a bright-line test requiring a finding of affiliation if there is any type of direct or indirect control over any third party.  See TIJID's Mem. at 12-16. Consequently, TIJID contends that Commerce applied an improper legal standard because it required a showing that the Hong Kong Companies were involved in the sale of subject merchandise.  See id. at 13.  The Court, however, finds this contention without merit and that Commerce applied the correct legal standard.

In Mitsubishi, 23 CIT at 335-36, 54 F. Supp. 2d at 1192, the court set forth the legal standard applicable under 19 U.S.C. §

1677(33)(F).  The court held that two elements must be satisfied for affiliation to exist.  First, two parties must be legally or operationally in a position to exercise restraint or direction over a third party.  See id.  Second, the relationship with the third party must have the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise.  See id. (citing 19 C.F.R. § 351.102(b)).  In order for Commerce to find that affiliation exists, the party alleging affiliation must successfully demonstrate that both elements have been fulfilled. In the case at bar, Commerce first evaluated whether TIJID and Fay Candle were in a position to exercise restraint or direction over the Hong Kong Companies.  See Issues and Decision Mem. at 6-7. Second, Commerce analyzed whether TIJID and Fay Candle's relationship with the Hong Kong Companies had the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise.  See id.  Accordingly, the Court finds that Commerce applied the proper legal standard in determining whether Fay Candle and TIJID were affiliated during the period of review.

> **2.    Commerce Reasonably Determined that Fay Candle was Not Legally or Operationally in a Position to Control the Hong Kong Companies**

The Court finds Commerce's determination that Fay Candle was not in a position to exercise control over the Hong Kong Companies is supported by substantial evidence.  Fay Candle failed to

satisfied the first element of control outlined in <u>Mitsubishi</u>, 23 CIT at 335-36, 54 F. Supp. 2d at 1192. The statutory language directs Commerce to find that affiliation exists when two parties exercise control over a third party. <u>See</u> 19 U.S.C. § 1677(33)(F) (defining affiliation as "[t]wo or more persons directly or indirectly <u>controlling, controlled by, or under common control</u> with, any person") (emphasis added). Actual control over the third party, however, is not required by the statute. <u>See</u> 19 U.S.C. § 1677(33). Rather, a person is considered to be in a position of control if he is legally in a position to exercise restraint or direction control over the other person. <u>See</u> <u>id.</u> (stating that "a person shall be considered to control another person if the person is <u>legally or operationally</u> in a position to exercise restraint or direction over the other person") (emphasis added); <u>see also</u> <u>Ferro Union, Inc. v. United States</u>, 23 CIT 178, 191-92, 44 F. Supp. 2d 1310, 1324-25 (1999) (stating that the determination of control is "not dependent on actually exercising control, but rather on the <u>capacity</u> to exercise control") (emphasis in original).

The statute requires either direct or indirect control. <u>See</u> 19 U.S.C. § 1677(33)(F). Here, Commerce reasonably concluded that Fay Candle neither directly nor indirectly exercised control over the Hong Kong Companies. Commerce found, however, that Fay Candle's involvement was limited to the fact that Fay Candle's CEO

was one of two board members for each of the Hong Kong Companies. See Analysis for the Final Results of the Administrative Review of Petroleum Wax Candles from the People's Republic of China: Dongguan Fay Candle Co., Ltd. ("Analysis Memo"), dated March 18, 2004, Commerce's App. at Tab 7 at 3. Furthermore, Commerce found that Fay Candle's involvement in the Hong Kong Companies could not be considered significant. See id. Accordingly, Commerce concluded that Fay Candle's involvement in the direction of the Hong Kong Companies was minor. See Issues & Decision Mem. at 8.

While there is record evidence that Fay Candle's CEO was authorized to sign financial statements and certifications for and on behalf of the Hong Kong Companies, see Pls.' Reply Def.'s Def.-Intervenor's Br. Opp'n Pls.' Mot. J. Upon Agency R. at 3, the Court will not replace its judgment for that of Commerce when there are reasonably conflicting views. See American Spring, 8 CIT at 22, 590 F. Supp. at 1276. Commerce's determination is based on substantial evidence and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent [Commerce's] finding from being supported by substantial evidence." Consolo, 383 U.S. at 620 (citations omitted). The Court finds that Commerce's determination that Fay Candle did not control the Hong Kong Companies is reasonable and supported by substantial evidence.

Moreover, TIJID failed to demonstrate that Fay Candle's

relationship with the Hong Kong Companies gave rise to a relationship that had the potential to impact decisions relating to the subject merchandise. TIJID argues that the statutory term "any" indicates, that Commerce must find affiliation based on the joint control of a third party, regardless of the activity or nature of that third party. See TIJID's Mem. at 13. The Court finds this argument is without merit. To satisfy the requirements of 19 U.S.C. § 1677(33)(F), Fay Candle's relationship with the Hong Kong Companies must have the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise or foreign like product. See Mitsubishi, 23 CIT at 335-36, 54 F. Supp. 2d at 1192. Commerce's relevant regulations state that certain factors must be considered in determining whether control over another person exists. See 19 C.F.R. § 351.102(b). The regulations instruct that Commerce "will not find that control exists on the basis of these factors unless the relationship has the potential to impact decisions concerning the production, pricing, or costs of the subject merchandise or foreign like product." Id. (emphasis added).

In reaching its determination, "Commerce must weigh the nature of entities' contacts over time, and must determine how such contacts potentially impact each entity's business decisions. Sporadic or isolated contacts between entities, absent significant

impact, would be less likely to lead to a finding of control." Hontex Enterprises, Inc. v. United States, 27 CIT ___, ___ n.17, 248 F. Supp. 2d 1323, 1344 n.17 (2003). TIJID argues that the regulation is limited to control relationships based on the factors enumerated in the regulation. See TIJID's Mem. at 16. The regulation, however, states that Commerce "will consider the following factors, among others . . . ." 19 C.F.R. § 351.102(b) (emphasis added). Accordingly, the enumerated factors are examples and not an exclusive list of the factors Commerce shall consider in its evaluation of control.

TIJID failed to demonstrate that the Hong Kong Companies were involved in sales of the subject merchandise. Commerce found that one of the two Hong Kong Companies was dormant during the period of review. See Analysis Memo at Tab 7 at 3. The other Hong Kong company was involved in sales of merchandise unrelated to the subject merchandise. See Affiliation Memo at Tab 4 at 6. Commerce found that, "even disregarding possible inconsistencies on the record, at best, the two Hong Kong companies were involved in sales outside the United States after the [period of review]." Issues & Decision Mem. at 8. Based on record evidence, the Court finds that Commerce reasonably concluded that Fay Candle's relationship with the Hong Kong Companies did not have the potential to impact decisions concerning the subject merchandise.

**IV    Commerce Properly Determined that Fay Candle and TIJID are not Affiliated Pursuant to 19 U.S.C. § 1677(33)(G)**

### 1.    Contentions of the Parties

#### A.    TIJID's Contentions

TIJID contends that Commerce applied the wrong legal standard in rejecting an assertion of affiliation under 19 U.S.C. § 1677(33)(G) and applied the improper standard for control set for in 19 C.F.R. § 351.102(b).  See TIJID's Mem. at 18-33.  TIJID notes that the regulation requires a finding of control "where the alleged affiliation has the potential to impact decision concerning the production, pricing, or cost of the subject merchandise or foreign like product."  Id. at 19 (emphasis in original).  In this case, however, Commerce "expressly rejected the regulatory standard, and instead required evidence of actual control . . . ." Id. at 24.  Commerce found that a close supplier relationship requires a finding of actual reliance between the companies.  See id. at 25. TIJID argues that actual reliance is no different from requiring proof of actual control and, therefore, contravenes the "potential" standard of 19 C.F.R. § 351.102(b).  See id. at 26. Record evidence, according to TIJID, supports a finding that it had the potential to impact decisions regarding the subject merchandise.  See id. at 21.

TIJID claims that without its assistance Fay Candle would not

have existed.  See id.  TIJID points to evidence that Mr. Saull, the principal of TIJID, funded a portion of Fay Candle's initial capitalization in exchange for an agreement that Fay Candle "would sell exclusively to Saull Enterprises, and that Saull Enterprises would have the authority to supervise production."  Id.  The CEO of Fay Candle and Mr. Saull did not reduce their agreements to writing because of their close relationship and the fact that they "conducted business with each other on the basis of a handshake . . . ."  Id.  TIJID asserts that it set the prices paid to Fay Candle and that Fay Candle rarely negotiated such prices.  See id. at 22.  Moreover, TIJID negotiated the sales terms and made all of Fay Candle's sales during the period of review without any involvement from Fay Candle.  See id.  TIJID maintains that its employees played significant roles in each step of Fay Candle's production process.  See id.  Specifically, TIJID purchased raw materials, "provided onsite technical assistance, oversaw quality control, and exercised final approval over product packaging."  Id. Consequently, TIJID had the potential to impact decisions concerning the pricing, production and cost of the subject merchandise.

TIJID further argues that Commerce failed to examine the nature of the relationship between TIJID and Fay Candle within the context of the totality of the evidence.  See id. at 26-28.  TIJID

asserts that there is record evidence of several factors whose net effect demonstrates that it was operationally in a position to restrain and direct the actions of Fay Candle.  See id. at 27. Commerce erred in evaluating whether each factor supported the assertion of affiliation individually.  See id.  Alternatively, even if Commerce properly considered each factor separately, then Commerce did not draw reasonable conclusions and failed to account for evidence that contradicted its conclusion.  See id. at 28-33. TIJID claims that Commerce unreasonably "dismissed the fact that Fay Candle sold exclusively to Saull Enterprises during the [period of review], because [TIJID] could not provide a 'written exclusive selling agreement.'"  Id. at 29.  TIJID maintains that it successfully demonstrated that there was no need for a written exclusivity agreement. See id. at 28.  Moreover, Commerce's demand for such an agreement is not the level of evidence required by the statute.  See id. at 29.

TIJID further alleges that its responses to Commerce's questionnaires demonstrate that it set the target prices paid for subject merchandise purchased from Fay Candle.  See id. at 29-30. TIJID claims that Commerce "unreasonably discounted the evidence that employees of Saull Enterprises impacted decisions concerning the production of subject merchandise."  Id. at 30.  Record evidence demonstrates that its employees directed Fay Candle's

production and that Commerce failed to address such evidence.  See
id.  Finally, TIJID contends that Commerce unreasonably dismissed
evidence "concerning the start-up capital provided by Saull
Enterprises to Fay Candle."  Id. at 31.  Rather, Commerce drew
unreasonable inferences and disregarded evidence that suggested the
business relationship between Fay Candle and TIJID was unusual.
See id. at 31-32.  Therefore, TIJID contends that Commerce's
determination was based on unreasonable inferences and failed to
account for contradictory evidence.

### B.    Commerce's Contentions

Commerce responds that it properly determined that TIJID and
Fay Candle were not affiliated pursuant to 19 U.S.C. § 1677(33)(G).
See Commerce's Resp. at 22-31.  Commerce asserts that Fay Candle
and TIJID's relationship indicates cooperation, but that "these
were merely acts of cooperation that would take place between any
two entities, affiliated or not affiliated, engaged in a business
relationship."  Id. at 22.  Commerce contends that, even though Fay
sold subject merchandise only to TIJID during the period of review,
Fay Candle and TIJID did not have a close supplier relationship
based upon reliance.  See id. at 22-23.  Accordingly, TIJID did not
control Fay Candle.  See id.

Commerce maintains that it did not consider whether there was
actual control "but rather, used ability or capacity to exercise

control, the standard mandated by the statute, the SAA and the regulations . . . ." Id. at 23. Commerce asserts that 19 U.S.C § 1677(33)(G) provides "authority for Commerce to link 'control' with 'restraint' or direction." Id. at 24. The requirement for control is that a party be in a position to exercise restraint or direction over the other person. See id. (citing Ferro Union, 23 CIT at 192, 44 F. Supp. 2d at 1327). Consequently, when Commerce examines the potential for control, "the potential is not abstract and hypothetical, but must be linked to a present and actual capacity or ability to exercise control." Id. at 23-24. Commerce contends that "TIJID erroneously argues that Commerce equates 'control' and 'reliance' and requires actual control and actual reliance." Id. at 24. Commerce explains that it required a showing that the relationship between TIJID and Fay Candle was significant and could not be easily replaced. See id. at 25. Once actual reliance is found, then Commerce makes a determination as to whether the relationship has the potential to impact decisions relating to the subject merchandise. See id. at 26.

Commerce contends that TIJID did not have the ability to exercise restraint or direction over Fay Candle. See id. at 26. Commerce's investigation revealed that the two entities cooperated with respect to product design, quality control, and specifications for the production of candles. See id. at 27. Commerce concluded,

however, that the cooperation and business arrangement was a natural outgrowth of a new foreign supplier attempting to attract business from large United States retailers. See id. at 26-27. Commerce also did not find evidence that Fay Candle was required to exclusively sell the subject merchandise to TIJID. See id. at 28. Moreover, TIJID's claim that Mr. Saull personally selected his close friend as Fay Candle's CEO is unsupported by record evidence. See id. at 27. The record shows that Mr. Saull could not have selected Fay Candle's management "because he was neither an owner or manager of Fay [Candle] and Fay [Candle's] personnel control [its] production and pricing decisions, overseen by a CEO appointed by Fay [Candle's] owners." Id. Commerce further asserts that there is no verifiable evidence that Mr. Saull provided investment capital for Fay Candle or that shares were ever issued to Mr. Saull. See id. at 28. Fay Candle's books show that Mr. Saull gave two down payments for two orders after Fay Candle had already been operating. See id. Accordingly, Commerce contends that it properly found that the vast majority of the proof cited by TIJID was based on unverifiable assertions of a close friendship. See id. at 28-29.

Commerce additionally argues that Fay Candle was not reliant upon TIJID in a "close business relationship." See id. at 26. Commerce asserts that "given the number of buyers and resellers in

the United States market, the numerous Chinese producers and exporters of candles, and TIJID's purchases from sellers other than Fay [Candle], there is no record evidence to demonstrate that TIJID was dominant in the market such that Fay [Candle] would be reliant." Id. at 30. Furthermore, record evidence indicates that Fay Candle controlled its own production and pricing decisions. See id. at 29-30. While TIJID argues that its bill of materials impacted Fay Candle's decisions concerning pricing, Commerce asserts that this does not demonstrate reliance. See id. at 30. Rather, Commerce notes that "[i]f a customer informs a supplier that it wants a product with certain specifications, it is logical to expect that the cost of the requested product will be reflected in the price." Id. Based on its comprehensive review of the record, Commerce maintains that Fay Candle was not reliant upon TIJID and therefore did not have a close supplier relationship as required for affiliation under 19 U.S.C. § 1677(33)(G).

NCA generally agrees with Commerce that TIJID and Fay Candle are not affiliated pursuant to 19 U.S.C. § 1677(33)(G). See NCA Resp. at 24-32. NCA asserts that the market and operational interaction between TIJID and Fay Candle show an absence of control and therefore no affiliation. See id. at 25. Accordingly, NCA argues that the totality of the evidence supports Commerce's determination that the two entities were not affiliated under the

statutory definition.  See id. at 32.

### 2.  Analysis

The Court finds that Commerce properly evaluated TIJID's alleged affiliation with Fay Candle under 19 U.S.C. § 1677(33)(G). Moreover, Commerce's determination that TIJID and Fay Candle are not affiliated is supported by substantial evidence and in accordance with law.  The statute directs Commerce to find affiliation exists when evidence demonstrates that a person controls any other person.  See 19 U.S.C. § 1677(33)(G).  The statute further states that, "a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person."  19 U.S.C. § 1677(33).  Although TIJID and Fay Candle exhibited a high level of cooperation, the Court finds that Commerce reasonably determined that TIJID was not in a position to exercise restraint or direction over Fay Candle.

Commerce's evaluation of TIJID's ability to control Fay Candle is proper under the statute.  In Ferro Union, 23 CIT at 192, 44 F. Supp. 2d at 1327, the court found that a party has the capacity to exercise control when it is in a position to restrain or direct. Accordingly, the potential of exercising restraint or control does not require a showing of actual control.  See id.  The plain language of the statute, however, does not indicate the meaning of

"position to exercise restraint or direction over the other person." 19 U.S.C. § 1677(33)(G). Commerce interprets the statutory language to mean that control exists only when "the relationship has the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise or foreign like product." 19 C.F.R. § 351.102(b). The Court finds that this is a reasonable interpretation of the statutory language. See Fujitsu, 88 F. 3d at 1038. Based on the regulatory language, a party must have the potential to impact such decisions. See 19 C.F.R. § 351.102(b). Commerce's determination, that a party must have the capacity, i.e. ability, to exercise control if it is to have the potential to exercise control, is a reasonable application of the statute.[5] See Koyo, 36 F.3d at 1570 (holding that "a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another"). Accordingly, the Court finds that Commerce properly determined that TIJID's potential to control Fay Candle must be accompanied by TIJID's ability to exercise control over Fay Candle.

---

[5] The Court notes that possessing the ability to control is a condition precedent to possessing the potential to exert control. The ability to control, however, is not equated to actual control but to capacity to control. Capacity is defined as "the ability to do something." Webster's II New Riverside University Dictionary 226 (1988). Potential is defined as "the inherent ability or capacity for growth, development, or coming into being." Id. at 920.

The Court finds that Commerce properly evaluated TIJID's assertion of a "close supplier relationship." TIJID argues that in the context of a "close supplier relationship," Commerce infringed on the proper legal standard by erroneously imposing a requirement of actual reliance and actual control. See TIJID's Mem. 25-26. The Court finds that TIJID's argument is without merit. A "close business relationship" is defined in the SAA[6] as a relationship where "the supplier or buyer becomes reliant upon the other."[7] H.R. 5110, H.R. Doc. No. 316, Vol. 1, 103d Cong., 2d Sess., at 838 (1994), reprinted in 1994 U.S.C.C.A.N. 4175. Commerce asserts that a "close supplier relationship" is established when a party demonstrates that the relationship is significant and could not be easily replaced. See Commerce's Resp. at 25. Commerce notes that it will look at whether the supplier has become reliant on the seller. See id. (citing Final Results of Antidumping Duty Administrative Reviews of Certain Cold-Rolled and Corrosion-Resistant Carbon Steel Flat Products From Korea, 62 Fed. Reg.

---

[6]    The SAA represents "an authoritative expression by the Administration concerning its views regarding the interpretation and application of the Uruguay Round agreements." H.R. Doc. No. 103-316, at 656 (1994), reprinted in 1994 U.S.C.C.A.N. 4040. "It is the expectation of the Congress that future Administrations will observe and apply the interpretations and commitments set out in this Statement." Id.

[7]    The term reliant is synonymous with the term "dependent." See Webster's at 992. The term "dependent" is defined as "[r]elying on the aid of another for support. See Webster's at 363.

18,404, 18,417 (Apr. 15, 1997)). Only if Commerce determines that there is reliance does it evaluate whether the relationship of reliance has the potential to impact decisions relating to subject merchandise. See Commerce's Resp. at 25. The Court finds that this two-step analysis does not impose an erroneous requirement of actual control for a determination of the party's potential to impact decisions. Commerce's interpretation of the statute applies the correct legal standard in determining whether affiliation exists pursuant to 19 U.S.C. § 1677(33)(G).

In the case at bar, Commerce reasonably determined that TIJID was not in a position to exercise control over Fay Candle, as required by the statute. TIJID argues that there is a "close supplier relationship" because Fay Candle sells 100 percent of its candles to TIJID. See TIJID's Mem. at 27. This fact alone does not support a finding of a "close supplier relationship." Commerce found that although Fay Candle may have sold 100 percent of its exports to TIJID, there was no evidence that Fay Candle was required to do. See Affiliation Memo at 8. Additionally, there was no evidence that TIJID was required to import subject merchandise only from Fay Candle. See id. TIJID did not provide any documentation that reflected an exclusive selling arrangement. See id. at 10. Rather, TIJID hangs its hat on the close "brotherly" relationship maintained by Mr. Saull and Fay Candle's

CEO and argues that a written agreement was unnecessary. See TIJID Mem. at 21. Without any documentation before it, Commerce reasonably concluded that Fay Candle was not bound to only sell the subject merchandise to TIJID. The evidence indicates that Fay Candle was free to sell the subject merchandise to other customers as well.[8] Moreover, there is no record evidence that TIJID was the dominant customer in the marketplace for candles. See Affiliation Memo at 8. Accordingly, Commerce's determination that Fay Candle was not reliant on TIJID for the sale of subject merchandise and that TIJID failed to demonstrate a "close supplier relationship" is supported by substantial evidence.

Commerce examined certain commercial invoices and sale documents to determine if TIJID set the sales price between itself and Fay Candle. Based on the record evidence, Commerce found that TIJID did not set the price of sales. See Affiliation Memo at 8 (citing confidential information). Fay Candle's questionnaire responses indicate that Fay Candle's personnel were in charge of setting the sales price for the subject merchandise. See id. Commerce also considered the presence of an employee of TIJID, who

---

[8] TIJID points to evidence that Fay Candle turned down the opportunity to sell to a different customer. See TIJID's Mem. at 29. This, however, is not indicative of an exclusive selling agreement. Rather, there are several reasonably inferences that may be drawn from Fay Candle's decision to reject an offer to sell to other retailers.

provided technical assistance and quality control at Fay Candle's factory.  See id.  Based on the affidavit of the employee, Commerce found that the employee's actions "are of the nature and kind often undertaken in manufacturing industries."  Id.  Commerce determined, however, that "at most [the employee] is responsible for quality control for the [United States] importers."  Id.  The Court finds that TIJID failed to demonstrate that Fay Candle relied on TIJID's employees for decisions concerning the production, pricing or cost of the subject merchandise.

Moreover, Commerce reasonably concluded that Mr. Saull did not provided start-up capital for Fay Candle.  There is record evidence that Fay Candle was producing candles prior to Mr. Saull's payment of money to Fay Candle.  See Affiliation Memo at 9.  Moreover, the payments do no resemble payments for start-up capital because Fay Candle was not obligated to repay Mr. Saull with interest nor did Mr. Saull receive shares in Fay Candle in exchange for his contribution.  Based on the payment records,  the Court finds that Commerce reasonably concluded that the payments were for subject merchandise purchased by TIJID and not a capital contribution.  Accordingly, Commerce properly determined that Fay Candle did not rely on TIJID and, therefore, TIJID did not control Fay Candle within the meaning of 19 U.S.C § 1677(33)(G).

**CONCLUSION**

The Court finds that Commerce applied the proper standard for control in its evaluation of TIJID and Fay Candle's relationship under 19 U.S.C. § 1677(33)(F) and (G). Moreover, the Court finds that Commerce's <u>Final Results</u> are supported by substantial evidence in accordance with law. Accordingly, the Court affirms Commerce's determination that Fay Candle and TIJID are not affiliated parties pursuant to 19 U.S.C. § 1677(33)(F) and (G). Commerce, therefore, properly used EP price in its calculation of the antidumping duty margin. Judgment will be entered accordingly.

/s/ Nicholas Tsoucalas
**NICHOLAS TSOUCALAS**
**SENIOR JUDGE**

Dated:    March 18, 2005
           New York, New York